IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 01-cr-330-4 |
| : | |
| v. : | |
| : | |
| : | No. 04-cv-5444 |
| HASSAN MOHAMMED MOHAMM HASSAN : | |

## MEMORANDUM AND ORDER

PRATTER, DISTRICT JUDGE                                                    JULY 18, 2006

Presently before the Court is the *pro se* habeas corpus petition filed by Petitioner Hassan Mohammed Mohamm Hassan pursuant to 28 U.S.C. § 2255. Mr. Hassan requests that the Court vacate a sentence imposed upon him for violations of the conditions of his supervised release. For the following reasons, the Court finds that Mr. Hassan is not entitled to habeas relief, and, accordingly, his petition is denied.

I.   BACKGROUND

On January 9, 2002, Mr. Hassan pled guilty to three counts of bank fraud and was subsequently sentenced to a term of six months imprisonment followed by five years supervised release.[1] Additionally, Mr. Hassan was ordered to pay a $300 special assessment, as well as restitution in the amount of $9,550. As conditions of his supervised release, Mr. Hassan, *inter alia*, was required to report to his probation officer, was to commit no federal, state, or local crimes, was not to leave the jurisdiction without prior permission, had to make restitution

---

[1] Mr. Hassan was immediately released based on the time he had theretofore served in federal detention.

payments of $100 per month, and was required to submit financial information when requested.

On April 30, 2003, after he was released from prison, Mr. Hassan appeared before then district court judge Franklin Van Antwerpen[2] for a hearing regarding violations of his supervised release, including his failure to pay the required restitution, submit his financial information forms, and stay in contact with the probation office.  At that time, Mr. Hassan admitted to violating the terms of his release, and the court modified the terms of Mr. Hassan's supervision, requiring him to spend six months at a Sanction Center, colloquially referred to as a "halfway house."

Mr. Hassan did not report to the Sanction Center as ordered and continued to fail to pay restitution and to report to the probation office.  It also came to light that, during the period after his first violation hearing, Mr. Hassan pled guilty to possessing a deadly weapon with intent to injure and second degree assault in Baltimore, Maryland.

On October 28, 2003, as a result of those incidents, Mr. Hassan appeared before the court for a hearing on revocation of his supervised release.  At that hearing, Mr. Hassan admitted that he violated the terms of his supervised release by failing to report to the Kintock Sanction Center and by failing to pay restitution.  Mr. Hassan also admitted that he had pled guilty in Maryland's Baltimore County Circuit Court on August 1, 2003 for two offenses, specifically, possessing a deadly weapon with intent to injure and assault in the second degree.

At the hearing, Mr. Hassan agreed that the violations for failing to pay restitution and failing to report to the Kintock Center were Grade C violations of supervised release in accordance with the policy statement set forth in Section 7B1.1(a)(3) of the Sentencing

---

[2] Judge Van Antwerpen has since been elevated to the Third Circuit Court of Appeals.

Guidelines. Mr. Hassan contested, however, the Government's position that the two Maryland convictions were a Grade A violation, arguing that the convictions were only a Grade B violation. See U.S.S.G. § 7B1.1(a).[3]

The district court heard testimony from Ms. Heather Lillick, Mr. Hassan's then-girlfriend, who stated that Mr. Hassan assaulted her in Baltimore in June 2003. Ms. Lillick testified that she and Mr. Hassan were arguing and, as Ms. Lillick was trying to leave in a car, Mr. Hassan struck her in her ear, tearing out her earing, causing her to bleed and lose hearing in that ear. Later, Mr. Hassan threw Ms. Lillick under the steering wheel of the car and began strangling her with an automobile timing belt. Mr. Hassan also reportedly told Ms Lillick that he was going to chop off her head and send it to Egypt. Mr. Hassan testified, however, that he merely pushed Ms. Lillick and that the extent to which he believed he pled guilty to in Maryland.

The district court credited Ms. Lillick's testimony and not that of Mr. Hassan. The court then found, by a preponderance of the evidence, that Mr. Hassan's Maryland convictions constituted crimes of violence punishable by a term of imprisonment exceeding one year, a Grade A violation. The district court ultimately revoked Mr. Hassan's supervised release, ordering him to be imprisoned for 36 months which was the maximum permissible for revocation of supervised release for a Class B felony pursuant to Section § 3583(e)(3) of the Sentencing

---

[3] Section 7B1.1(a) of the United States Sentencing Guidelines states, in relevant part:
(a) There are three grades of probation and supervised release violations:
(1) Grade A Violations--conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence . . .
(2) Grade B Violations--conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year. . . .

Guidelines.[4]  The district court stated that, in arriving at the 36 month sentence, which exceeded the advisory sentencing range of 12 to 18 months,[5] it considered, *inter alia*, the hearing evidence, Mr. Hassan's original Presentence Report, relevant statutes and portions of the Guidelines Manual, the need for protection of the public, the need for deterrence, and Mr. Hassan's history, characteristics and needs.

Mr. Hassan appealed his 36-month sentence for the violations of the conditions of his supervised release.  The Court of Appeals for the Third Circuit affirmed the 36-month sentence, finding that the district court's sentence was not "plainly unreasonable."  United States v. Hassan, No. 03-4402, 104 Fed. Appx. 834, 835 (3d Cir. July 29, 2004) (citing United States v. Blackston, 940 F.2d 877, 879 (3d Cir. 1991)).  The Court of Appeals also held that the district court did not err in determining that the government had shown, by a preponderance of the evidence, that Mr. Hassan's criminal convictions in Maryland were Grade A violations of his supervised release.  Id. at 836.

Mr. Hassan filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2255, requesting the Court to vacate the sentence imposed on him for the violating the conditions of his

---

[4] Section 3583(e)(3), in relevant part, provides that a court may:

> revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release . . . except that a defendant . . . may not be required to serve . . . more than 3 years in prison if such offense is a class B felony . . . . .

[5] Section 7B1.4(a) of the United States Sentencing Guidelines, *inter alia*, provides a recommended range of 12-18 months for Grade A violations of supervised release committed by a defendant with a criminal history category of I.

supervised release.[6] Mr. Hassan alleges three grounds for relief, namely, (1) violation of his Sixth Amendment rights; (2) ineffective assistance of counsel; and (3) violations for "illegal enhancements."

## II.   STANDARD OF REVIEW FOR 28 U.S.C. § 2255

Section 2255 allows a prisoner in custody to attack his sentence if it was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255.  Thus, a petitioner may only prevail on a section 2255 habeas claim by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424, 428 (1962).  The petitioner is entitled to an evidentiary hearing as to the merits of his claims unless the "files and records of the case conclusively show the petitioner is not entitled to relief."  28 U.S.C. § 2255.  The decision as to whether it is clear from the record that the prisoner is not entitled to relief is within the sound discretion of the district court.  United States v. Nino, 878 F.2d 101, 103 (3d Cir. 1989) (citation omitted).  Here, Mr. Hassan is not entitled to an evidentiary hearing because it is clear from the

---

[6] Mr. Hassan's habeas corpus petition requests the Court to vacate the sentence imposed for violations of his supervised release and the arguments contained in the petition all relate to the supervised release violations.  Mr. Hassan inaccurately states that he was sentenced to 42 months for the violations.  Rather, Mr. Hassan was only sentenced to 36 months for the violations.  The six month differential apparently arises from a sentence imposed for contempt of court.  Because Mr. Hassan makes no mention whatsoever of that sentence, the Court will restrict its discussion and findings to Mr. Hassan's arguments regarding the 36-month sentence imposed for the violations of supervised release.

record that his sentence should not be set aside, vacated, or corrected pursuant to Section 2255.

## III. DISCUSSION

### 1. Lack of Knowledge and Ineffective Assistance of Counsel

Mr. Hassan argues that he did not know the nature of the allegations against him and that his then-counsel was ineffective.  Mr. Hassan alleges that his counsel was ineffective for: (1) disregarding "the events of the arrest as to the illegal search and seizure;" (2) inappropriately failing to inform Mr. Hassan of the allegations against him, their seriousness, and the consequences that would flow from admitting that he violated the terms of his supervised release; and (3) failing to advise him of court proceedings which took place outside of his presence.

To succeed on a claim of ineffective assistance of counsel, Mr. Hassan must show that (1) counsel's performance was deficient, and (2) this deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).  To show deficient performance, Mr. Hassan must come forth with evidence that his counsel's representation fell "below an objective standard of reasonableness."  Id. at 688.  To show the requisite level of prejudice, Mr. Hassan must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "[A] party claiming ineffective assistance must identify specific errors by counsel, and the court must indulge a strong presumption that counsel's conduct was reasonable."  Stevens v. Del. Corr. Ctr., 295 F.3d 361, 370 (3d Cir. 2002) (citing Strickland, 466 U.S. at 690).

The Government asserts that Mr. Hassan's claim for ineffective assistance of counsel cannot stand because he has failed both to identify specific errors made by counsel as well as the prejudice supposedly caused by those errors.

As stated above, Mr. Hassan makes essentially three claims of ineffectiveness against his counsel, which, in consideration of Mr. Hassan's *pro se* status, constitute "specific errors." First, Mr. Hassan argues that counsel was ineffective in failing to appropriately inform him of the allegations, their seriousness, and the consequences of his decision to admit to the violations of supervised release. The record, however, reflects that Mr. Hassan was fully aware of the allegations and their potential consequences. Specifically, Mr. Hassan himself testified that he violated the terms of his supervised release by failing to report, pay restitution and for his convictions in Maryland. Mr. Hassan even articulated his reasons for failing to abide by the terms of his supervised release, including his financial obligations to his family and fear of going to the Kintock Sanction Center. The record also indicates that Mr. Hassan testified that he was aware of the seriousness of the allegations against him and the consequences that would flow therefrom. That is, Mr. Hassan was asked by counsel to tell the court why he should not be given the 36 month sentence requested by the Government, and Mr. Hassan articulated his reasons for why such a sentence should not be given. Thus, it is clear that Mr. Hassan was aware of the allegations against him, their seriousness, and the potential consequences if the court were to find he committed the infractions.

Furthermore, even if it were arguable that counsel failed to inform Mr. Hassan of the allegations and consequences of admitting to the violations and even if that failure was professionally unreasonable, Mr. Hassan cannot demonstrate to a reasonable probability that, but for counsel's errors, the 36-month sentence imposed by the district court would have been different. Mr. Hassan stated on the record that he failed to pay restitution, failed to report to the Kintock Center, left the jurisdiction without permission, and pled guilty to the Maryland charges,

and the district court thereafter found by a preponderance of the evidence that Mr. Hassan committed supervised release violations and sentenced him to the 36 months.

Mr. Hassan also argues that counsel was ineffective by failing to inform Mr. Hassan of the proceedings of the case which took place outside of his presence. Mr. Hassan does not allege what proceedings did in fact take place outside of his presence, nor what information counsel withheld from him. As noted above, Mr. Hassan admitted to violating conditions of his supervised release, which violations were found to have been committed by a preponderance of the evidence of the trial court, and the court sentenced Mr. Hassan to 36 months for violating those conditions. Thus, Mr. Hassan has failed to show both that counsel's actions were unreasonable as well as how counsel's purported failures to keep Mr. Hassan informed of proceedings which took place outside of his presence brought about the outcome to which Mr. Hassan objects.

Mr. Hassan also argues that counsel was ineffective for failing to object to the events of his arrest with respect to an "illegal search and seizure." Inasmuch as the allegation attacks the underlying Maryland state court conviction, this is not the proper forum to raise those issues. To the extent that Mr. Hassan is challenging the revocation of his supervised release, Mr. Hassan has not shown that his rights were violated or that counsel was ineffective in objecting to the revocation. Moreover, even if counsel's actions were unreasonable, Mr. Hassan has failed to show the requisite level of prejudice, as outlined above.

   2.    **Right to a Jury and Illegal Enhancements**

Mr. Hassan discusses at great length his claims that the district court illegally enhanced the sentence given for the violations of supervised release. Mr. Hassan argues that his violations

should have been excused, that the court erred in finding that the Maryland convictions were a Grade A violation, that a jury should have determined the violations, and that he should have been given a "downward departure" because the Maryland convictions were actually a domestic dispute that "got out of hand."

Mr. Hassan argues that his 'technical' violations of the conditions of his supervised release should have been excused by the district court. Specifically, Mr. Hassan asserts that he failed to file a financial affidavit with the United States Probation Office because of his inability to comprehend the English language and that he was financially unable to pay the required restitution. As an initial matter, the financial affidavit violation was a previous violation and was not an issue at the violation hearing and sentencing from which Mr. Hassan is now seeking relief. That is, Mr. Hassan violated the terms of his supervised release by failing to file a financial affidavit before the April 30, 2003 hearing, for which violations the district court sentenced Mr. Hassan to the Sanction Center. There is no evidence that Mr. Hassan's failure to file a financial affidavit was still an issue at the October 2003 hearing and sentencing from which he seeks relief in the pending petition.

Mr. Hassan also argues that his admitted failure to pay restitution should have been somehow excused or overlooked by the district court because he was allegedly unable to make the $100 per month payments as ordered by the court. The record reflects that Mr. Hassan was making payments to the Probation Office on an infrequent basis, and that one of those monthly payments was for $130. Mr. Hassan, in his petition, as he did at the supervised release revocation hearing, acknowledges that he failed to make the proper payments as ordered by the court in direct violation of the terms of his supervised release. Mr. Hassan also admitted that he

9

repeatedly failed to report to the Probation Office, as well as the Kintock Sanction Center. Mr. Hassan, after receiving many opportunities to abide by the terms of his supervised release, continued to fail to meet his obligations – all of which he admitted. He cannot now find fault in the court for finding that he did so violate the terms of his release.

With respect to the alleged violations of his Sixth Amendment right to trial by jury, Mr. Hassan argues that the court inappropriately found, by a preponderance of the evidence, that he had committed a Grade A violation. Mr. Hassan argues that, pursuant to Blakely v. Washington, 124 S. Ct. 2531 (2004), Apprendi v. New Jersey, 530 U.S. 466 (2000), and United States v. Booker, 543 U.S. 220 (2005), his constitutional rights were violated because a jury must find beyond a reasonable doubt that the violation occurred.[7] These cases are inapposite, however, with respect to Mr. Hassan's jury trial argument because defendants are not entitled to a jury finding for violations of supervised release. That is, the United States Supreme Court explicitly held that a violation of supervised release need not be found by a jury by proof beyond reasonable doubt. United States v. Johnson, 529 U.S. 694, 700 (2000); 18 U.S.C. § 3583(e)(3). Rather, all that is required is that a court find the violative conduct under a preponderance of the evidence standard. Johnson, 529 U.S. at 700; 18 U.S.C. § 3583(e)(3).

Mr. Hassan also argues that the district court wrongfully classified his Maryland state

---

[7] As an initial matter, the applicability of Booker is suspect in this case because it is not retroactively applied and is not available to convictions where the judgment was final before January 12, 2005, the day the Booker opinion was issued. Lloyd v. United States, 407 F.3d 608, 615-616 (3d Cir. 2005). Here, Mr. Hassan's sentence was affirmed by the Third Circuit Court of Appeals on July 2, 2004. His sentence became final 90 days thereafter upon the expiration of the time to file a writ of certiorari to the United States Supreme Court. See e.g., Dixon v. United States, No. 04-4315, 2005 U.S. Dist. LEXIS 26226, at *2 n.1. Thus, Mr. Hassan's sentence of 36 months for violations of the conditions of his supervised release was final well before the issuance of Booker on January 12, 2005, and Booker does not here apply.

convictions as a Grade A violation, which offenses should have been correctly classified as a Grade B violation.  As noted above, Mr. Hassan appealed the judgment of the district court revoking his supervised release for a Grade A violation.  The Third Circuit Court of Appeals held that the district court did not err in classifying Mr. Hassan's Maryland convictions for assault and possession of a deadly weapon with intent to injury as a Grade A violation.  <u>United States v. Hassan</u>, No. 03-4402, 104 Fed. Appx. 834, 836 (3d Cir. July 29, 2004).  Specifically, the Third Circuit held that the district court "correctly concluded that the government had demonstrated by a preponderance of the evidence that a Grade A violation had occurred" because the Maryland convictions were punishable by imprisonment exceeding one year, and were for crimes of violence because they involved "'the use, attempted use, or threatened use of physical force against the person of another'" and because they also involved "'conduct that presents a serious potential risk of physical injury to another.'" <u>Id.</u> (quoting U.S.S.G. § 4B1.2(a)).  The Court also finds that the sentencing court did not err in finding by a preponderance of the evidence that Mr. Hassan's convictions for assault and possessing a deadly weapon with intent to injure were crimes of violence.  Thus, Mr. Hassan's allegation that the district court erred in classifying his Maryland offenses as Grade A violations does not support relief here.

 Mr. Hassan argues that, even if the Grade A classification was proper, the court erred in sentencing him above the guidelines advisory range of 12 to 18 months for a Grade A violation to the statutory maximum of 36 months imprisonment.  That is, Mr. Hassan argues that the court's sentence was unreasonable based on the circumstances of the underlying Maryland offenses.  Specifically, Mr. Hassan believes that leniency was appropriate because the Maryland convictions were actually a domestic dispute that "got out of hand."

With respect to the 36 month sentence, the advisory sentencing guideline range pursuant to Section 7B1.4 for Revocation of Supervised Release for Mr. Hassan's Grade A violation was 12 to 18 months. The district court had the statutory authority, however, to order Mr. Hassan to be imprisoned for 36 months because the original offense that resulted in supervised release (i.e., bank fraud) was a Class B felony. 18 U.S.C. §§ 3583(e)(3), 3559(a). When a court imposes a longer sentence in a Revocation of Supervised Release Proceeding, the court must "consider" the sentencing range pursuant to Section 7B1.4(a), as well as "state on the record its general reasons under [18 U.S.C.] section 3553(a) . . . for imposing a more stringent sentence." United States v. Blackston, 940 F.2d 877, 894 (3d Cir. 1991). Additional factors the court must consider include: "(1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to afford adequate deterrence to criminal conduct; (4) the need to protect the public from further crimes of the defendant; and (5) the need to provide the defendant with appropriate treatment." Id. at 893; see also 18 U.S.C. §§ 3553(a), 3583(e). Section 3553(a) does not require the court to make findings on each factor, but rather the record must reflect that the court gave meaningful consideration to the factors, as well as any argument raised by a party that has "recognized legal merit." United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006).

Sentences for violations of supervised release will only be overturned if they are "plainly unreasonable." United States v. Blackston, 940 F.2d 877, 879 (3d Cir. 1991); 18 U.S.C § 3742(e)(4).[8] Here, the record indicates that the district court explicitly acknowledged the

---

[8] Although habeas petitioners have argued that Booker lessened the "plainly unreasonable" standard of review to requiring that the sentences be "reasonable," the Third Circuit Court of Appeals has not yet decided what standard of review applies to violations of supervised release after Booker. See e.g., United States v. Burke, No. 05-2778, 2006 U.S. App. LEXIS 9923, at *2 (3d Cir. Apr. 18, 2006) (declining to determine post-Booker standard of

advisory guideline range, as well as the factors for consideration, including, *inter alia*, Mr. Hassan's refusal to take advantage of the rehabilitative opportunity of the Sanction Center, the lack of efficacy of the supervision, Mr. Hassan's flagrant disregard of previous orders of the court and of instructions given to him by the United States Probation Office, his leaving the jurisdiction without permission, his commission of two very serious crimes of violence punishable by imprisonment exceeding one year, his incorrigibility, and his lack of respect for the authority of the court. Mr. Hassan argued that he should be allowed to go to the Sanction Center so that he could work and support his family, arguments the trial court found to be belied by Mr. Hassan's failure to report to the Kintock Sanction Center and outweighed by the above-listed factors.

On this record, the Court finds that the sentencing court gave "meaningful consideration" to the appropriate factors and Mr. Hassan's arguments and that the sentence was reasonable, particularly given the number of times Mr. Hassan admittedly violated the conditions of his supervised release and the nature of his violations. Mr. Hassan was afforded every leniency and his argument that the court should have been lenient because of the victim's relationship to Mr. Hassan do not here entitle him to relief.

### III.   CONCLUSION

For the foregoing reasons, the Court denies Mr. Hassan's Section 2255 motion requesting the Court to vacate, set aside, or correct his sentence for the violations of the conditions of his

---

review with respect to sentences for violations of supervised release); United States v. Rose, 05-2961, 2006 U.S. App. LEXIS 9924, at *5 (3d Cir. Apr. 18, 2006) (same). To the extent that Booker is applicable in this case, see *supra* note 7, the Court finds that the sentence imposed on Mr. Hassan for his violations was proper under the less deferential reasonable standard, the Court also need not reach the issue of whether Booker changed the standard of review.

supervised release.

BY THE COURT:

_____
GENE E.K. PRATTER
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 01-cr-330-4 |
| : | |
| v. : | |
| : | |
| : | No. 04-cv-5444 |
| HASSAN MOHAMMED MOHAMM HASSAN : | |

**ORDER**

AND NOW, this ___ day of July, 2006, upon consideration of Petitioner Hassan Mohammed Mohamm Hassan's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 (Docket No. 153) and the Government's Response thereto (Docket No. 155), it is hereby ORDERED that the petition is DENIED.

IT IF FURTHER ORDERED that no certificate of appealability will be issued on the ground that Petitioner Hassan has not made a substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c).

BY THE COURT:

  /s/ Honorable Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge